_JjLEON A. CANNIZZARO, JR., Judge.
This case involves an appeal from a summary judgment in favor of the defendant, Board of Commissioners for the Port of New Orleans (hereinafter referred to as the “Dock Board”), against the third party defendant, P & 0 Ports Louisiana, Inc.[1] P & 0 Ports is appealing the trial court’s ruling in favor of the Dock Board.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
John Morelia and his wife, Jewel Morel-la, originally sued the Dock Board for damages relating to an accident suffered by Mr. Morelia during the course and scope of his employment with P & 0 Ports. Mr. Morelia was operating a top loader[2] at the France Road Terminal, a wharf facility in New Orleans where ships transporting cargo are loaded and unloaded. When he was operating the top loader, it unexpectedly hit a pot hole in a paved area at the terminal, causing Mr. Morelia to be injured.
2Mr. Morelia collected worker’s compensation benefits from P & 0 Ports pursuant to the Louisiana Workers’ Compensation Law, La. R.S. 23:1021 et. seq. The Louisiana Workers’ Compensation Law was the exclusive remedy available to Mr. Morelia against P & 0 Ports in connection with the injuries he suffered from the accident involving the top loader. La. R.S. 23:1032 provides employers with immunity from tort lawsuits brought by employees for unintentional, job related injuries.
The terminal property was leased by the Dock Board to P & 0 Ports under a written lease. Because the Dock Board owned the property where Mr. Morelia was injured, he sued the Dock Board claiming damages for the injuries that he had suffered as a result of the top loader hitting a pot hole on the Dock Board’s property. The lease between the Dock Board and P & 0 Ports contained several provisions that related to the allocation of responsibility between the lessor and the lessee for injuries occurring on the leased premises.
After the Morellas sued the Dock Board, the Dock Board filed a third party demand against P & 0 Ports. In the third party demand the Dock Board alleged that pursuant to the lease, the terminal where Mr. Mollera’s injuries occurred was under the “garde”[3] of P & 0 Ports. Thus, the Dock Board claimed that P & 0 Ports was solely responsible for injuries occurring at the terminal. The Dock Board also alleged that pursuant to the lease, P & 0 Ports owed the Dock Board a defense injjthe suit filed by the Morellas and indemnification for any claims for which the Dock Board was held liable.
After P & 0 Ports answered the third party demand, it filed a motion for summary judgment against the Dock Board. P & 0 Ports argued that any obligation to defend or indemnify the Dock Board would arise only after there had been a judgment against the Dock Board and only if the *323 Dock Board- were not found to be negligent in connection with Mr. Morelia’s accident. It was P & 0 Ports’ position that no indemnity or defense costs would be owed to the Dock Board if Mr. Morelia’s accident were determined to be caused by the Dock Board’s negligence. Therefore, P & 0 Ports urged the trial court to find that the Dock Board’s claims for a defense by P & 0 Ports and for indemnity were premature.
■On P & 0 Ports’ motion for summary judgment, the trial court held that P & 0 Ports owed the Dock Board a defense prior to a determination regarding the Dock Board’s negligence or lack thereof in connection with Mr. Morelia’s accident. Although the judgment rendered by the trial court stated that the motion for summary judgment filed by P & 0 Ports was denied, it is apparent that by holding that P & 0 Ports was only required to provide the Dock Board a defense,, rather than a defense and indemnification, the trial court in effect granted P..& 0 Ports’ motion for summary judgment with respect to the indemnification issue.
The Dock Board also filed a motion for summary judgment. The Dock Board argued that the trial court should find that the Dock Board was entitled to a defense furnished by P & 0 Ports and to indemnification for any losses the Dock Board might suffer in connection with the Morel-las’ claims. Although the ' trial court’s judgment does not expressly refer to the motion for summary judgment filed by the Dock Board, by holding that P & 0 Ports owed a defense to the Dock |4Board, the trial court effectively granted the Dock Board’s motion for summary judgment in connection with the defense owed by P & 0 Ports while effectively denying the Dock Board’s motion for summary judgment on the issue of whether indemnification was owed by P & 0 Ports prior to the court’s determination of whether or not the Dock Board was' negligent in connection with Mr. Morelia’s accident.
P 0 Ports is now appealing the trial court’s holding that it owes a defense to the Dock- Board on the grounds that it is premature to require P & 0 Ports to provide a defense. The Dock Board had originally sought a ruling that, even though there has been no determination regarding negligence with respect to Mr. Morelia’s accident, not only a defense but also indemnification are owed to the Dock Board. The Dock Board, however, has apparently abandoned its claim that indemnification is owed prior to a determination that it was not negligent. At oral argument the attorney representing the Dock Board argued that a defense, but not indemnification, is owed by P & 0 Ports until there has been a determination that the Dock Board was free from fault in connection with the accident.'
STANDARD OF REVIEW
In Independent Fire Insurance Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226, the Louisiana Supreme Court discussed the standard of review of a summary judgment as follows:
Our review of a grant or denial of a motion' for summary judgment is de novo. Schroedef v. Board of Sup’rs of Louisiana State University, 591 So.2d 342 (La.1991). A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue ás to material fact, and that the mover is entitled to judgment as a ' matter of law.” La. C.C.P. art. 966(B). This article was amended in 1996 |sto provide, that “summary judgment procedure is designed to secure the just, speedy, and inexpensive *324 determination of every action....” La. C.C.P. art. 966(A)(2). In 1997, the article was further amended to specifically alter the burden of proof in summary judgment proceedings as follows:
The burden of proof remains with the movant. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
La. C.C.P. art. 966(C)(2).
99-2181, 99-2257, p. 7, 755 So.2d at 230-31. See also Shelton v. Standard/700 Associates, 2001-0587 (La.10/16/01), 798 So.2d 60. Therefore, we must conduct a de novo review in the instant case.
DISCUSSION
Lease Provisions
The trial court determined that P & O Ports’ duty to furnish a defense to the Dock Board was established in the lease between the Dock Board and P & O Ports. The lease contained broad indemnity provisions in favor of the Dock Board reading in relevant part as follows:
Lessee shall protect, defend, indemnify, and forever hold harmless Board against all losses, costs, claims, charges, expenses, penalties, damages, fines, suits, demands, attorney’s fees, interest, and actions of any kind and nature whatsoever arising out of, in connection with, or by reasons of any of Lessee’s operations ... on the Leased Premises, including such as may be imposed for the violation of any Laws ... including all liability under employer’s liability or worker’s compensation acts....
Another section of the lease tracked the language quoted above except that the indemnification obligation under that section arose in relevant part out of “any accident or other occurrence, whether directly or indirectly caused, occasioned or | r,contributed to in whole or in part through any act, omission, fault or negligence ... of Lessee, its officers, directors, employees, representatives, agents or invitees .... ”
The lease also carved out an exception to the indemnity obligations in the lease. The lease provided that “[t]he above [the indemnity provisions] notwithstanding, Lessee shall not be obligated to indemnify this Board for its negligence or fault or that of its officers, directors, employees, representatives, agents or invitees.”
The lease further provided for the hiring of attorneys and the payment of attorneys’ fees in connection with P & O Ports’ indemnity obligations under the lease. The lease stated that when P & O Ports is fulfilling its obligations under the indemnity provisions of the lease, it must “engage attorneys to defend Board.” Additionally, P & O Ports must select only attorneys to which the Dock Board has given its prior, written consent. Finally, the lease provided that if the Board has to retain an attorney to enforce the indemnity provisions of the lease, then P & O Ports shall be liable for the reasonable attorney’s fees and costs associated with enforcing those provisions.
Assignments of Error
P & O Ports has raised three assignments of error in this case. Both issues of fact and issues of law are involved in the assignments of error. P & O Ports asserts that the trial court erred in the following ways:
(1) by holding that P & O Ports was required to undertake the Dock Board’s defense prior to a finding that the Dock Board was not negligent in connection with Mr. Morel-la’s claims;
*325 |7(2) by failing to consider whether the Dock Board waived certain insurance requirements in the lease and whether the Dock Board’s failure to correct the condition of the paved portions of the terminal area obviated the obligation to defend; and
(3) by failing to hold that P & 0 Ports does not owe indemnity to the Dock Board whether or not the Dock Board is negligent, because P & 0 Ports does not owe indemnity to the Dock Board if it is negligent, and there will be no judgment against the Dock Board to be indemnified, if the Dock Board is not negligent.
Legal Analysis
Under all of the assignments of error, the legal issue to be decided is whether P & 0 Ports owes a defense to the Dock Board prior to a determination that the Dock Board is free from negligence in connection with the claims made against the Dock Board by the Morellas. The trial court judge found that P & 0 Ports was obligated to defend the Dock Board against the Morellas’ claims even without a determination that the Dock Board was negligent, because the judge held that the obligation to defend under the lease was broader than the obligation to indemnify. The determination of whether the Dock Board was free from negligence in connection with Mr. Morelia’s accident and the determination of whether any other party was at fault present material issues of fact that are yet to be resolved. Therefore, the trial court judge was correct in not finding that P & 0 Ports owed indemnity to the Dock Board prior to the resolution of those issues of fact. We must, however, examine her holding that P & 0 Ports must defend the Dock Board from the Morellas’ claims prior to a determination regarding the Dock Board’s negligence.
|sIn Meloy v. Conoco, Inc., 504 So.2d 833 (La.1987), the Louisiana Supreme Court stated as follows regarding the distinction between an indemnity agreement and an insurance policy:
An indemnity agreement is a specialized form of contract which is distinguishable from a liability insurance policy. A cause of action under a liability insurance policy accrues when the liability attaches. However, an insurer’s duty to defend arises whenever the pleadings against the insured disclose a possibility of liability under the policy. On the other hand, an indemnity agreement does not render the indemnitor liable until the indemnitee actually makes payment or sustains loss. Therefore, a cause of action for indemnification for cost of defense does not arise until the lawsuit is concluded and defense costs are paid.
504 So.2d at 839 (emphasis added) (citations and footnotes omitted).
This Court has also held that a cause of action for indemnification for the cost of defense does not arise until- the lawsuit is concluded, and the costs of the defense are paid. In Webb v. Shell Offshore Inc., 557 So.2d 276 (La.App. 4th Cir.1990), this Court, citing the Meloy case, stated that “a cause of action for indemnification for cost of defense does not arise until the lawsuit is concluded and defense costs are paid.” 557 So.2d at 278. This Court further stated that “Shell must assert its action for defense costs after the termination of the instant suit and may only recover if it is free of negligence or fault.” Id.
In Thibodaux v. Southern Natural Gas Co., 97-1483 (La.App. 4 Cir. 1/23/98), 705 So.2d 1287, this Court considered whether or not a contracting company, John E. Graham & Sons, was contractually obligated to defend Columbia Gulf Transmission Company. The indemnity language con *326 tained in an agreement between the two parties read as follows:
Contractor [Graham] shall indemnify and hold harmless Company [Columbia] from and against any and all loss, | sdamage and liability and from any and all claims for damages on account of or by reason of bodily injury, including death, which may be sustained or claimed to be sustained by any person ... provided such are actually caused by or arise out of negligent acts or omissions of Contractor or its agents or employees in connection with the performance of this contract ... provided, however, that the foregoing indemnification shall not cover loss, damage or liability arising from the sole negligence of the Company.... Contractor shall at its own cost and expense defend any such claim, suit, action or proceeding, whether groundless or not ... and Contractor shall pay any and all judgments which may be recovered in any such action ... and defray any and all expenses, including costs and attorney’s fees, .... (emphasis ours)
1997-1483, pp. 2-3, 705 So.2d at 1288.
In the Thibodeaux case, the indemnitee, in whose favor the indemnity provision had been executed, argued that the provision obligated the indemnitor to provide a defense for the indemnitee. The indemnitee further argued that the indemnitors obligation to defend the indemnitee was separate and apart from any question of the indemnitors potential liability under the indemnity provision. This Court determined that, under the indemnity provision quoted above, the indemnitors duty to defend was triggered only in those instances where the indemnitors negligence was a contributing cause of the claim against the indemnitee. This Court noted that were the provision to be interpreted otherwise, then the indemnitor would be required to defend any suit brought against the indem-nitee.
In the Thibodeaux case this Court noted that the language requiring indemnification of the indemnitee also required that the indemnitee must not be negligent for indemnification to be owed. Therefore, the duty to defend was triggered only where the indemnitee was not negligent. The provision in the contract regarding the duty to provide a defense for the in-demnitee provided that | in“in any such claim, suit, action or proceeding,” the in-demnitor would be obligated to defend the indemnitee. Id. (emphasis added). This Court noted that the qualifying word “such” referred to claims where the indem-nitee was not negligent; otherwise, any suit brought against the indemnitee, whether or not it involved the indemnitor in any way, would have to be defended by the indemnitor. This Court found that would be a result “we cannot envision as being intended.” Id. Similarly, in the instant case we cannot envision that the parties to the lease intended PO Ports to be required to defend a claim brought against the Dock Board prior to a finding that the Dock Board was not negligent in connection with the claim.
In Coleman v. Transit Management of Southeast Louisiana, Inc., 98-1511 (La.App. 4 Cir. 11/10/98), 723 So.2d 495, this Court again considered the duty to defend under an indemnification agreement. In that case the trial court granted an indem-nitee’s motion for summary judgment and ordered the indemnitor to provide a defense to the indemnitee. The trial court judge interpreted the indemnity provision to require that the indemnitor bear all costs of the defense. The trial court judge then held that if the indemnitee should be proven to be solely at fault with respect to the claim against it, then the indemnitor would be entitled to reimbursement of the *327 amounts it had paid on behalf of the in-demnitee. This Court held that there was a distinction between an insurer’s obligation to defend its insured and an indem-nitor’s obligation to an indemnitee for the costs of a defense. This Court cited the Meloy case and the Webb case and discussed the proposition that a cause of action against an indemnitor for defense costs arises after the termination of the lawsuit against the indemnitee and is contingent upon the indemnitee being free from fault in connection with the claims against it in the underlying lawsuit. This Court then reversed the trial court’s decision.
In Roundtree v. The New Orleans Aviation Board, 2002-1757 (La.App. 4 Cir. 4/9/03), 844 So.2d 1091, this Court again considered whether the duty to defend under an indemnity agreement arose prior to a judgment against the indemni-tee. The provisions of the relevant indemnity agreement read in pertinent part as follows:
6. Indemnification. The Contractor agrees to indemnify, defend by counsel acceptable to the Board and hold harmless the City of New Orleans, the New Orleans Aviation Board ... from any and all claims ... losses, damages or expense incurred by the Board resulting from the Contractor’s performance of its obligations....
2002-1757, p. 6, 844 So.2d 1094-95. The trial court had ordered the indemnitor to defend the indemnitee. This Court reversed the trial court on this issue, however, because there was nothing in the indemnity agreement to indicate that the parties intended for the indemnitee to be indemnified in the event of its own negligence. Therefore, since the issue of negligence had not yet been tried, it was error for the trial court to require the indemnitor to defend the indemnitee.
In the instant case the Dock Board argued in oral argument that although the obligation of P & O Ports to indemnify is dependent on a finding that the Dock Board was not negligent in connection with the Morellas’ claims, the obligation to defend the Dock Board is not contingent on a finding of negligence. The Dock Board based its argument on the language in the lease stating that “[t]he above [the indemnity provisions] notwithstanding, Lessee shall not be obligated to indemnify this Board for its negligence or fault or that of its officers, directors, employees, representatives, agents or invitees.” Because the word “defend” is not included with the word “indemnify” in this provision, the Dock Board contended that only [ iathe obligation to “indemnify”, not the duty to defend, is contingent on the freedom from negligence on the part of the Dock Board. We disagree.
It is well settled in Louisiana jurisprudence that a contractual indemnity agreement will not be construed to require the indemnitor to indemnify the indemni-tee for the indemnitee’s own negligence. In Polozola v. Garlock, 343 So.2d 1000 (La.1977), the Louisiana Supreme Court stated as follows:
A contract of indemnity whereby the indemnitee is indemnified against the consequences of his own negligence is strictly construed, and such a contract will not be construed to indemnify an indemnitee against losses resulting to him through his own negligent act, unless such an intention was expressed in unequivocal terms.
343 So.2d at 1003. See also Perkins v. Rubicon, Inc., 563 So.2d 258, 259 (La. 1990), where the Supreme Court stated that “a contract will not be construed to indemnify an indemnitee against losses resulting to him through his own negligence *328 unless such an intention is expressed in unequivocal terms.”
This Court has also ruled that an indem-nitor is not obligated to indemnify an in-demnitee against the indemnitee’s own fault absent a clear, unequivocal statement to that effect in the indemnity agreement. See, e.g., Carr v. New Orleans, 626 So.2d 374 (La.App. 4th Cir.1993); Federal National Mortgage Association v. Sethi, 557 So.2d 354 (La.App. 4th Cir.1990); Rosales v. Dixie Mill Supply Company, 376 So.2d 179 (La.App. 4th Cir.1979).
In the instant case there is nothing in ' the indemnity provision that unequivocally states that the Dock Board will be indemnified for its own negligence. In fact, the agreement expressly states that notwithstanding what is in the indemnification provisions in the lease, P & 0 Ports “shall not be obligated to indemnify this Board for its negligence or fault.” This language unequivocally | ^states that P & 0 Ports’ duty to indemnify is conditioned upon a lack of fault on the part of the Dock Board.
Under Louisiana law absent an unequivocal agreement to the contrary, contractual indemnity agreements do not cover situations in which the indemnitee is found to be at fault. The language in the lease in this ease simply states what the law in Louisiana already provides. The omission of the word “defend” from the lease provision quoted in the preceding paragraph cannot in any way be construed as unequivocally providing that P & 0 Ports is obligated to defend the Dock Board from its own negligence. The only way the Dock Board could be entitled to have P & 0 Ports defend it prior to a determination that the Dock Board was free from fault in connection with the Mor-ellas’ claims would be by having an express, unequivocal provision affirmatively stating that P & 0 Ports agreed to defend the Dock Board without regard to fault on the part of the Dock Board. There is no such provision in the lease. Therefore, the obligation of P & 0 Ports to indemnify and defend the Dock Board does not arise until there has been a determination that the claims made against the Dock Board by the Morellas were not the fault of the Dock Board, and the issue of the Dock Board’s fault has not yet been determined by the trial court.
We find that the trial court erred in holding that P & 0 Ports has a duty to defend the Dock Board at this point in the instant case. The issue of whether the lease requires P & 0 Ports to indemnify the Dock Board for attorneys’ fees and other obligations that the Dock Board incurs in connection with the instant case cannot be decided until there is a decision regarding the Dock Board’s fault in connection with the Morellas’ claims. The obligation of P & 0 Ports to indemnify and defend the Dock Board is contingent upon the Dock Board’s lack of 1 unegligence. Because the Dock Board’s negligence or lack thereof has not yet been determined, any obligations that P & 0 Ports has under the indemnity provisions of the lease to indemnify and defend the Dock Board have not yet arisen. Therefore, the Dock Board’s claims against P & 0 Ports are premature.
CONCLUSION
The judgment of the trial court that P & 0 Ports owes the Dock Board a duty to defend the Dock Board at this time is hereby reversed. Insofar as the trial court ruling finds that indemnification is not owed at this time to the Dock Board by P & 0 Ports, that part of the ruling is affirmed. This case is hereby remanded to the trial court for further proceedings in accordance with this opinion.
*329 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

. The third party demand was made against New Orleans Marine Contractors, Inc. and its successor, P & O Ports.

. A top loader is a piece of heavy machinery that is used to move cargo at the wharf.

. In Loescher v. Parr, 324 So.2d 441 (La. 1976), the Louisiana Supreme Court discussed the meaning of the term "garde” and stated that "the English translation of 'sous sa garde’ as 'in our custody' does not fully express the concept of the 'garde’ of a thing— the legal responsibility for its care of keeping — , so that one may lose the custody of a thing without losing its 'garde’.” 324 So.2d at 447 n. 6. See also Ross v. La Conste de Monterville, 502 So.2d 1026, 1029-32 (La. 1987); Mix v. Krewe of Petronius, 95-1793 (La.5/22/96), 675 So.2d 792, 796 n. 3.